SO ORDERED: July 24, 2006.



_____
**Anthony J. Metz III
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

IN RE:

| | | |
|---|---|---|
| David Wayne Gardner | ) | Case No. 05-33414-AJM-13 |
| | ) | |
| Debtor | ) | |

**ORDER ON TRUSTEE'S OBJECTIONS
TO CONFIRMATION OF DEBTOR'S PLAN**

This matter came before the Court on July 7, 2006 upon the Chapter 13 Trustee's objections to confirmation of the Debtor's chapter 13 plan. Present at the hearing were the Chapter 13 Trustee, Robert Brothers (the "Trustee"); the Debtor appeared by counsel Mark Zuckerberg and Sally O'Connor. Also appearing was Richard Shea of the law firm of Tom Scott and Associates, who filed an amicus brief. The Court heard the oral arguments of counsel. At the conclusion of the hearing the Court ruled from the bench, sustaining in part and overruling in part the Trustee's objections. The Trustee's objections, in part, are based

1

upon new provisions of the Bankruptcy Code enacted by BAPCPA [1] and therefore little case law exists in this District as to how such provisions apply. This entry is intended in part to give guidance to practitioners as to how this Court interprets such provisions.

*Background*

The Debtor filed his voluntary petition under chapter 13 on December 19, 2005. The Debtor's amended chapter 13 plan filed on December 20, 2005 provided that the Debtor would pay $545.00 a month for 39 months. The Debtor's bankruptcy attorney is owed $2689.00 (the "Administrative Claim") and the plan provided that this administrative claim was to be paid in full by the Trustee through the plan. The Debtor owns a 1995 Dodge Ram 2500 in which American General holds a lien. The amount of American General's secured claim is $9229.46 and the Trustee is to pay American General monthly adequate protection payment equal to 1% of its allowed secured claim. The Trustee is to disburse the monthly adequate protection payments and such payments are to commence "as soon as practicable after receiving them from the debtor" meaning that they are to commence before confirmation of the plan. Upon confirmation, the adequate protection payments are to continue and are to be paid concurrently with the Administrative Claim. *Once the Administrative Claim is paid in full*, American General's secured claim is to be reduced by the amount of adequate protection payments paid and the remainder of the secured claim is to be paid in Equal Monthly Amounts ("EMA's"). [2] Pursuant to the terms of the plan, the amount of the EMA payment is to be determined by the Trustee.

---

[1] "BAPCPA" refers to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, which applies to cases filed on and after October 17, 2005.

[2] American General has not objected to the Debtor's plan.

The Trustee objected to the plan on several grounds which are discussed below, but the most pertinent for purposes of this entry is that the Trustee believes the portion of the plan dealing with adequate protection payments and attorney fees violates Section 1325(a)(5)(B)((iii)(I). The Trustee argues that this Section requires that adequate protection payments are paid only pre-confirmation, and cease upon confirmation, at which time both the payments on the Administrative Claim and the *EMA payments* commence and are paid concurrently. Because EMA payments by definition are in an amount significantly larger than the adequate protection payments, there is left a smaller amount available each month to pay the Administrative Claim, thus lengthening the time in which the Debtor's attorney fees will be paid in full. The Trustee's interpretation has far reaching consequences for chapter 13 debtors' attorneys who depend on full payment of their attorneys' fees through the plan within a short time after confirmation. Based on the reasoning in the *De Sardi* case, the Court finds that the Debtor's plan does not violate Section 1325(a)(5)(B)((iii)(I) and the Court will address this objection first.

## *Discussion*

### *Adequate Protection Payments in Chapter 13*

BAPCPA enacted significant changes to the Bankruptcy Code. BAPCPA not only addresses the issue of adequate protection for secured creditors, but also the treatment of secured creditors claims when the Chapter 13 plan proposes to pay the secured creditors claim in equal monthly installments (EMA). Prior to the enactment of BAPCPA, secured creditors voiced concerns about protecting their interest in their collateral during the interim between filing the petition and the time they began receiving payments on their secured claim under the plan. Under the terms of many Chapter 13 plans, secured creditors did not

begin receiving payments under the plan for months, and in some cases, more than a year. While waiting for payments to commence, there was a substantial risk to secured creditors of diminution in value of the collateral without any protection. BAPCPA intended to cure this problem. It codified the requirement of adequate protection payments to secured creditors to protect against the diminution in value of their collateral until they began receiving payments on their secured claim. In the only reported decision to date to deal with this issue, the Court noted:

> Two practices existed before **BAPCPA** that were viewed, by many, as abusive. **First, chapter 13** plans were being confirmed by bankruptcy courts that deprived car lenders of any **payments** for a number of **months.** Prior to its amendment, § 1325(a)(5) did not explicitly require **adequate protection payments—a chapter 13** plan could "provide **payment** to secured claim holders in an amount not sufficient to keep pace with depreciation of the underlying collateral." Hon. Keith Lundin and Henry Hilderbrand, III, *Section by Section Analysis of* **Chapter 13** *After* **BAPCPA,** SLO68 ALI-ALB 65, 94 (2005). Or a plan could provide no **payment** at all for a period of time. Forcing "creditors with security interest…to await **payment** on their secured claims…often resulted in uncompensated depreciation of collateral during the pendancy of a **chapter 13** case. In the worst-case scenario, a creditor could wait as long as twenty-four **months** before receiving distributions on an allowed secured claim." Richardo Kikpatrick, *Selected Creditor Issues Consumer Protection Act of 2005,* 79 Amer.Bankr.L.J.817, 836(2005).
>
> To **protect** its interest, a lender could object to confirmation and argue the **adequate protection** issue with no assurance of success. If the objection failed, and the **first payment** to the car lender was scheduled for **month** eight, the debtor could use the car for the **first** seven **months** of the plan with no **payment** to the car lender. Pursuant to § 1307(b), the debtor could convert his case at any time to a case under **chapter 7.** Under this scenario, an abusive debtor could manipulate the system and get free use of a quickly depreciating asset without making **adequate protection payments**. When the case was converted to a case under

> **chapter 7,** the lender could repossess its depreciated asset, but the debtor would be discharged of his obligation to the car lender, after having free use of the car for many **months.** Section 1325(a)(5)(A)(iii)(II) now **protects** against that abuse by assuring—through **adequate protection payments—**that the lender's position will not worsen during the initial stages of a **chapter 13** case.

See *In re DeSardi*, *et. al.*, 340 B.R. 790, 809-10 (Bankr. S. D. Tex. 2006).

In addition to the changes to Section 1325, BAPCPA also modified Section 1326 to codify when the adequate protection payments must begin. It states: "Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of filing of the plan or the order for relief, whichever is earlier, in the amount…that provides adequate protection directly to a creditor holding an allowed claim secured by personal property …". §1326(a). Thus, it is clear that secured creditors must receive adequate protection payments at the outset of the case. The Debtor's plan complies with this requirement.

***Adequate Protection Payments to the Secured Creditor May Continue Until Creditor's EMA Payments Commence Under the Plan and Administrative Expenses, Which Include Debtor's Attorney Fees and Creditor's Adequate Protection Payments, are to be Paid Before Payments are Made to Secured Creditors.***

Although BAPCPA provides when adequate protection payments must start, it is silent as to when they should end. Since the idea is to protect secured creditors until they receive payment on their claim under the plan, then adequate protection payments must continue until EMA payments commence. To hold otherwise would defeat the purpose of the adequate protection payment requirement under BAPCPA.

Although the Bankruptcy Code is silent on the issue of when adequate protection payments must stop, it is not silent on when administrative expenses, which include a debtor's attorney fees, must be paid. Section 1326 spells out when and in what order

5

payments are to be made in a Chapter 13 proceeding. More specifically, 1326(b) requires that administrative expenses, which include attorney fees, must be paid first. It states "…Before or at the time of each payment to creditors under the plan, there shall be paid—(1) any unpaid claim of the kind specified in section 507(a)(2) of this title…". Section 507(a)(2) claims are "administrative expenses allowed under section 503(b) of this title…" which are expenses which specifically include "compensation and expenses awarded under section 330(a)…". Section 330(a) expenses are expenses which specifically include in chapter 13 case, under Section 330(a)(4)(B), that are "reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case…". Thus, the Bankruptcy Code makes it clear that debtor's attorney's fees are §507(a)(2) administrative expenses and, therefore, must be paid first under Section 1326.

Current case law supports this position. In *In re DeSardi*, the court states:

Section 1326(b)(1) prohibits the chapter 13 trustee from making any payments to creditors under the plan until the § 507(a)(2) payments have been made.

*In re Desardi*, *infra* at 808.

The court in *Desardi* held that administrative expense claims must be paid in full before EMA payments commence. The Court ruled that both adequate protection payments to secured creditors and administrative expenses, which include a debtor's attorney's fees, are §507(a)(2) claims which fall within the ambit of Section 1326(b)(1) and must be paid before other creditors receive payments under the plan.

The *Desardi* court acknowledged that there is disagreement as to whether Section 1326(b)(1) requires administrative expenses to be paid *in full* before payment to other creditors or whether only partial payment to administrative expenses is sufficient before

payments to other creditors. The Court found the reasoning of *In re Harris*, 304 B.R. 751 (Bankr.E.D.Mich.2004) to be most persuasive. *Harris* came to two important conclusions. First, it concluded that the language of Section 1326 required that administrative expenses must be paid before or simultaneously with payments to other creditors under the plan. It reached this conclusion by looking at the plain language of Section 1326(b) and determined the phrase "there shall be paid [administrative expenses]" meant the administrative expenses must have already been paid or will be paid simultaneously with payments to other creditors. Second, it ruled not only must administrative expenses be paid, it also concluded the administrative expenses must be paid *in full* either before other creditors receive any payments or be paid *in full* simultaneously with the payment to other creditors. In other words, a partial payment of the administrative expense claims does not satisfy the requirement that administrative expense claims "shall be paid at or before the time" any other creditors receive payments. Specifically, the court stated:

> There is a dichotomy in the language of the statute that supports the interpretation in *Harris*. The statute mandates that any unpaid § 507(a)(2) claim be paid before there are payments to other creditors under the plan. "[P]ayment to creditors under the plan" refers to periodic partial payments on claims. Conversely, "there shall be paid any unpaid claim" mandates full payment of the claim. This contrasting terminology requires full payment of any administrative claim before (or at the time of) general payments should commence under a chapter 13 plan. *See Jama v. Immigration and Customs Enforcement,* 543 U.S. 335, 357, 125 S.Ct. 694, 160 L.Ed2d 708 (2005); *Sosa v. Alverez-Machain,* 542 U.S. 692, 712, 124, SCt. 2739, 159 L.Ed2d 718 (2004)

*DeSardi, infra*, at 809.

*DeSardi* further supports this interpretation by reference to the legislative history of Section 1326:

> The legislative history of § 1326 also supports the understanding that § 507(a)(2) claims are to be paid first and in full. The House Report for The Bankruptcy Reform

> Act of 1978 states that "Subsection [1326(b)(1)] requires that before or at the time of each payment any outstanding administrative expenses and any percentage fee due for a private standing chapter 13 be paid in full." H.R.Rep. No. 95-595, 430 (1978). The Senate Report from the same session of Congress states that "Section 1326 supplements the priorities provisions of section 507. Subsection [1326(b)(1)] requires accrued costs of administration and filing fees, as well as fees due the chapter 13 trustee, to be disbursed before payments to creditors under the plan." S.Rep. No. 95-989, 142 (1978).

*DeSardi*, *infra*, at 809.

These sections which make attorney fees administrative expenses which must be paid first were not substantively changed by the BAPCPA amendments. It has been the practice in this jurisdiction to pay attorney fees first. This practice was justified by the Bankruptcy Code prior to the enactment of BAPCPA and should not change unless BAPCPA clearly requires it. Since BAPCPA has no such requirement, then the practice should continue.

There is also a very practical reason for paying attorney fees first. If attorneys are not fairly and promptly paid for their services there is a substantial risk that many of the bankruptcy bar, which is comprised of a number of experienced attorneys, will not continue to practice in the bankruptcy arena. Such a result could be disastrous for debtors and the Court. If there were not a sufficient number of experienced bankruptcy practitioners to represent debtors, there would be a substantial increase in *pro se* filings. Chapter 13's are no longer a simple proceeding and are rife with pitfalls for unwary debtors. An experienced bankruptcy bar is essential to the operation of a smooth and fair bankruptcy process. Clearly, attorney fees should be paid simultaneously with the adequate protection payments.

*DeSardi* also addressed the issue of when EMA payments must commence. It concluded that the Bankruptcy Code does not require EMA payments to commence upon confirmation.

> The equal payment provision does not state that its requirements must be met beginning in month one of the plan. Nor does the section state that payments must be equal "as of the effective date of the plan." In contrast, the immediately preceding section of § 1325(a)(5)(B)(ii) does use such language. That section states that "Except as provided in subsection (b) the court shall confirm a plan if…with respect to each allowed secured claim provided for by the plan…the plan provides that…the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim…" 11 U.S.C. § 1325 (a)(5)(B)(ii). While perfectly aware of its drafting options, Congress wrote "[I]f…property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts [.]" 11 U.S.C. § 1325(a)(5)(B)(iii)(I). Most importantly, subsection 1325(a)(5)(A)(iii)(II) explicitly requires that payments be not less than the amount to provide adequate protection "during the period of the plan." No similar language exists in subsection (I). The Court understands this clause to require payments to be equal once they begin, and to continue to be equal until they cease.

*Desardi*. *Infra* at 805.

*DeSardi* clearly points out that the subsection dealing with the *value* to be distributed to the secured creditor requires the value "as of the effective date of the plan" be not less than the allowed amount of the claim. See Section 1325(a)(5)(B)(ii). But it also points out that in the subsection dealing with the creditor being paid in periodic payments, there is no provision that the periodic payments (i.e. EMA payments) must commence on the "effective date of the plan". See Section 1325(a)(5)(B)(iii)(I) and (II). In fact, it holds to the contrary:

> Section 1326(b)(1) requires that § 507(a)(2) claims be **paid** before, or at the same time as, the **payment** of other claims **paid** by the **chapter 13** trustee. These claims include, for example, both **adequate protection payments** and **payments** to debtor's counsel. Pursuant to § 1326(b)(1), amounts payable to a car lender in excess of the amount of **adequate protection** may not be **paid** until all § 507(a)(2) **payments** have been made.

*DeSardi*, *infra*, at 807-08.

*DeSardi*, through its careful statutory interpretation shows that the Bankruptcy Code, as amended by BAPCPA, requires:

9

    1.    Adequate protection payments commence within 30 days of the petition date or plan filing, whichever is earlier and continue until EMA payments commence;

    2.    Administrative expense payments, including debtor's attorney's fees, are to be paid in full before other creditors receive any payments (except adequate protection payments);

    3.    EMA payments for secured creditors should not commence until administrative expenses have been paid in full and do not need to commence upon confirmation of the plan

In the present case, the debtor's plan meets these requirements. It proposes to pay the secured creditor adequate protection to protect against diminution in value of collateral until it begins making EMA payments to the secured creditor. Second, it proposes to pay administrative expenses in accordance with the Bankruptcy Code, i.e. it assures all administrative expenses, including debtor's attorney's fees, are paid in full at or before other creditors receive payments under the plan. Third, it provides EMA payments to the secured creditor to assure the creditor is paid in full on its secured claim. The Trustee's objection with respect to this issue is OVERRULED.

### *Other Objections*

The Trustee also objects to the Debtor's plan because:

1. The Debtor is behind in payments to the Trustee;

2. The Debtor's plan base is not sufficient to fund the plan;

3. The Debtor failed to state the amount of equal monthly payments (EMA) that the secured creditors are to receive under the plan; and

4.  The Trustee's computer program stops adequate protection payments upon confirmation, and the Trustee cannot continue adequate protection payments post-confirmation

### *Debtor Must be Current on Plan Payments in Order to Have His Plan Confirmed*

The Trustee is correct that Debtor must be current on plan payments in order to have his plan confirmed. Debtor's counsel, in open court, advised the Court that the Debtor will immediately become current in his plan payments.

### *The Debtor Must Increase His Plan Base to Adequately Fund the Plan*

The Debtor's counsel, in open court, advised the court that Debtor will file an amended plan with a sufficient base to fund his plan.

### *The Debtor, Not the Trustee, Must Determine The Amount of EMA Payments to Be Paid to Secured Creditors*

The Debtor's counsel, in open court, advised the Court that it is the Debtor's duty, not the Trustee's duty to determine EMA payments. Debtor, in his amended plan will include an appropriate EMA amount for the secured creditors with an interest in personal property.

### *The Trustee's Objection to the Plan Based upon his Computer Program's Inability to Calculate and Pay Adequate Protection Payments Post-Confirmation is Moot*

The Trustee, in open court, advised the Court that he has discovered that his computer program can be modified to continue adequate protection payments post-confirmation. Therefore, this issue is moot.

*Order*

It is therefore ORDERED, ADJUDGED AND DECREED that:

1. The Trustee's objection to allowing Adequate Protection payments post-confirmation until all attorney fees have been paid is OVERRULED; the Trustee's Objection to paying debtor's attorney fees in full before commencing EMA payments under the plan is also OVERRULED.  Debtor's plan should provide that adequate protection payments are to commence no later than thirty (30) days after the date the plan is filed and that, upon confirmation, concurrent payment of adequate protection payments and attorney fee payments shall commence and shall continue until the attorney fees are paid in full.  At such point, adequate protection payments shall cease and EMA payments may commence under the plan.

2. The Trustee's objection as to all other issues is SUSTAINED.

3. The Debtor is ORDERED to file an amended plan within twenty (20) days from the date of this order which extends the term of the plan to provide adequate funding and which also provides the amount of the EMA payments to be paid to American General; and

4. The Debtor is ORDERED to bring current his plan payments owed to the Trustee;

# # #

Distribution:

Mark Zuckerberg / Sally O'Connor, Attorneys for the Debtor
Robert Brothers, Chapter 13 Trustee
Richard Shea
Nancy J. Gargula, United States Trustee